IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Norfolk Southern Railway Company, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 19 C 6120 ) |
| International Association of Sheet Metal, Air, Rail and Transportation Workers – Transportation Division. | ) ) ) ) ) |
| Defendant. | ) |

Memorandum Opinion and Order

This dispute under the Railway Labor Act, 45 U.S.C. § 151 et seq. ("the RLA"), arises out of changes the Norfolk Southern Railway Company ("the Carrier") made to it attendance policy governing train and engine employees, including employees represented by defendant SMART-TD ("the Union"). The parties' relationship is governed by a collective bargaining agreement, but the written agreement does not address the Carrier's attendance policy. Indeed, all agree that the Carrier has always set its attendance policy unilaterally and made changes to it from time to time without objection from the Union.

As of 2007, the Carrier's attendance policy stipulated that all operating employees were full-time employees. As such, they were required to maintain acceptable work records and be available

to meet the Carrier's needs, subject to "reasonable mark-off privileges." The Carrier later clarified that frequent or pattern "layoffs" on the part of an employee (which in this context means unscheduled absences for personal or other reasons) would be considered a failure by the employee to satisfy his or her full-time work obligations and would subject the employee to review for the five-step progressive discipline process known as "handling." *See* Dep. of Jacob Elium, 21:17-22:1, DN 30-3 (defining "handling").

In April of 2019, the Carrier informed the Union in an email to its General Chairperson that "unscheduled, non-compensated mark-offs by our Train and Engine employees have become far too frequent" and attached attendance data to substantiate its position. In the Carrier's view, "[n]ot only does this negatively impact Norfolk Southern's ability to effectively manage operations and serve our customers; it also has a negative impact on managing compensated scheduled leave." Accordingly, the Carrier advised the Union of its intent to issue a bulletin updating its attendance policy to reflect that "[i]n addition to the criteria outlined in the current policy, employees who mark-off 'more than three weekdays (Mon-Thur) or more than one weekend day (Friday-Sunday) in a 90 day period will be reviewed for handling.'"

The Union objected to this development, claiming that it violated the "Crew Consist Agreement" of the collective bargaining agreement. The Crew Consist Agreement requires the Carrier to

2

"maintain, through recall of furloughed trainmen and/or hiring of new employees, a sufficient number of regular and extra employees *to permit reasonable layoff privileges* and to protect must-fill vacancies, vacations, personal leave days and other extended vacancies." (Emphasis added) In the Union's view, restricting "mark-offs" as provided in the updated attendance policy allowed the Carrier to reduce its workforce to barebones levels, violating the Carrier's obligation to provide sufficient staffing to guarantee "reasonable layoff privileges." The Union thus took the position that Carrier's change in the attendance policy unilaterally altered employee working conditions, giving rise to a "major" dispute for purposes of the RLA.

This characterization of the dispute matters because the RLA provides specific dispute resolution procedures for "major" disputes, and carriers may not change employee working conditions—that is, they must maintain the status quo—until the dispute is resolved through those procedures. Moreover, only major disputes can lawfully escalate into strikes. "Minor" disputes, on the other hand—which is how the Carrier views the parties' disagreement over the attendance policy—must be resolved through the CBA's grievance and arbitration provisions. The RLA prohibits strikes over minor disputes.

The Carrier filed this action claiming that the Union violated the RLA by threatening to strike over a minor dispute. The Carrier

3

seeks a declaration that the parties' dispute is indeed minor, as well as an order compelling the Union to engage in the CBA's grievance and arbitration procedures to resolve it. The Union counterclaimed for a declaration that the Carrier's actions violate the RLA because they disrupt the "status quo" and for an injunction to restrain further violations of the statute. Both parties also seek an award of reasonable attorneys' fees. The parties agree that their claims are appropriate for resolution on summary judgment and have filed cross-motions under Rule 56. For the reasons that follow, the Carrier's motion is granted and the Union's is denied.

I.

The RLA "is designed to channel labor disputes into constructive resolution proceedings as a means of avoiding interruptions to commerce among the states." *Burlington N. R. Co. v. United Transp. Union*, 862 F.2d 1266, 1271 (7th Cir. 1988) (citing *Detroit & Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 148-149 n. 13 (1969)). It creates "two distinct avenues for dispute resolution," *id*., depending on whether the dispute is major or minor—although the statute does not itself use those terms, *Railway Labor Act. Ry. Labor Executives Ass'n v. Norfolk & W. Ry. Co.*, 833 F.2d 700, 704 (7th Cir. 1987).

4

In *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945), the Supreme Court laid out the distinction between the two classes of disputes:

> The first [major] relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.
>
> The second class [minor], however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employment relation, or asserted one, independent of those covered by the collective agreement, e.g., claims on account of personal injuries. In either case the claim is to rights accrued, not merely to have new ones created for the future.

*Id*. at 723. In short, "[a] minor dispute is a dispute over interpretation of an existing contract; a major dispute is an attempt to create a contract or change the terms of a contract." *Labor Executives*, 833 F.2d at 704 (citation omitted; alteration in original). Put differently, "major disputes concern the creation of contractual rights" while minor disputes concern "the interpretation or enforcement of vested contractual rights. *Burlington*, 862 F.2d at 1272. If the parties disagree as to whether their dispute can be resolved with reference to their collective

5

bargaining agreement, "the dispute is minor unless the carrier's claims of contractual justification are 'frivolous' or 'obviously insubstantial.'" *Labor Executives*, 833 F.2d at 704 (quoting *Atchison, Topeka & Santa Fe Ry. v. United Transp. Union*, 734 F.2d 317, 321 (7th Cir. 1984)).

Although the Union strains to characterize the Carrier's conduct as a failure to "make and maintain agreements," and thus the dispute as one that involves the creation of contractual rights, the substance of the Union's argument—which references "violation" of the parties' agreement no fewer than ten times—belies this characterization and underscores that the dispute involves the *enforcement* of rights and requires consideration of their agreement. *See* Union's SJ Mot., *passim*. That the written CBA does not address the attendance policy does not change the analysis. As the court explained in *Labor Executives*, "[a] written agreement...does not necessarily contain all relevant working conditions.... Within the railroad industry in particular, it is common practice to omit from written agreements non-essential practices that are acceptable to both parties." *Id*. at 705 (citing *Shore Line* 396 U.S. at 153–54). Accordingly, the parties' collective agreement is deemed to include "both the specific terms set forth in the written agreement and any well established practices that constitute a 'course of dealing' between the carrier

6

and employees." *Id*. The Carrier's attendance policy is just such practice.

The Union claims that the change to the attendance policy amounted to a change in employee working conditions that required "Section 6 Notice" and associated procedures under the RLA.[1] But ultimately, the change in the attendance policy is a sideshow to the Union's main argument, which is that the Carrier breached its staffing obligations under the Crew Consist Agreement, then changed the attendance policy to "mask its breach of the CBA." Union Mot. at 1. Whatever the Union seeks to gain by framing the dispute in this way, what it actually does is reinforce the conclusion that the dispute involves a "breach" of the parties' agreement—the quintessence of a "minor" dispute requiring interpretation of their agreement.

*Labor Executives* is instructive. In that case, the carrier had long conducted routine medical examinations to determine its employees' fitness for duty. Although the parties' written agreement neither authorized nor prohibited medical exams, the

---

[1] Section 6 of the RLA provides that: "Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within thirty days provided in this notice."

7

union had never objected to them or to any of the specific tests they entailed. But after the carrier added to the medical exam a urinalysis test to detect the presence of drugs, the union objected and characterized the dispute as major for purposes of the RLA. *Labor Executives*, 833 F.2d at 702-03.

The court began by considering whether the routine medical examinations were part of the parties' agreement and determined that they were. *Id*. at 705-06. It then went on to decide whether the dispute over the carrier's unilaterally-imposed drug tests was major or minor. The court concluded that in view of the parties' well-established past practice of allowing the carrier "unilateral authority" to decide the testing required to ensure its employees' fitness for duty, the addition of a drug screening test did not amount to "such a drastic change" from their established course of conduct that it could not "arguably be justified by reference to the parties' agreement." *Id*. at 606. Accordingly, the court construed the dispute as "a minor dispute within the exclusive jurisdiction of the NRAB under the Railway Labor Act." *Id*. at 708.

So, too, in this case, does the Carrier's change in its attendance policy concerning its treatment of "mark-offs" arguably fall within the scope of the authority the parties' previously granted the Carrier with respect to its attendance policy. Accordingly, the dispute is minor for purposes of the RLA. Like the *Labor Executives* court, however, I underscore that this

8

conclusion says nothing about the merits of the dispute, i.e., whether the changes to the Carrier's attendance policy is consistent with the parties' agreement. *See id.* at 707. ("it is important to emphasize what we are not deciding. We are not deciding that N & W's drug testing program is justified by its agreement with the unions. The NRAB, not this court, has exclusive jurisdiction to decide the merits of this case.").

For the foregoing reasons, plaintiff's motion for summary judgment is granted, and defendant's motion is denied. The dispute involving the April 2019 changes to the Carrier's attendance policy is a minor dispute for purposes of the RLA. Any challenge to that policy must be resolved through the grievance and arbitration procedures provided in the collective bargaining agreement. As neither party has cited authority supporting its request for attorneys' fees, both such requests are denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: February 9, 2021

9